# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JAMES A. HAMMOND,

                  Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                  Defendant.

Case No. 3:11-cv-05408BHS-KLS

REPORT AND RECOMMENDATION

Noted for March 2, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On June 18, 2007, plaintiff filed an application for disability insurance and another one for SSI benefits, alleging disability as of December 1, 2001, due to a herniated disc, mental

REPORT AND RECOMMENDATION - 1

problems and being a slow learner. See Administrative Record ("AR") 16, 173, 176, 195. Both applications were denied upon initial administrative review and on reconsideration. See AR 16, 76, 79, 86, 91. A hearing was held before an administrative law judge ("ALJ") on December 4, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 31-71.

On December 18, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 1, 2011, making the ALJ's decision defendant's final decision. See AR 1; 20 C.F.R. § 404.981, § 416.1481. On May 31, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on August 9, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred in assessing his residual functional capacity. Plaintiff also argues additional evidence submitted to the Appeals Council warrants remand for further administrative proceedings as well. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and accordingly recommends that the ALJ's decision should be reversed, and this matter should be remanded to defendant for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process,"[1] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four of the evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.

REPORT AND RECOMMENDATION - 3

impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity "**to perform the full range of sedentary work**," with additional limitations "**consisting of simple repetitive tasks for no longer than two hours at a time**" and "**only . . . superficial contact with the public that does not require maintaining consistently good hygiene**." AR 20 (emphasis in original). Plaintiff argues the ALJ erred in failing to also include in his RFC assessment any of the postural limitations found by the medical opinion sources in the record. For the reasons set forth below, the undersigned agrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

REPORT AND RECOMMENDATION - 4

"logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In regard to the medical opinion evidence in the record, the ALJ found in relevant part as

REPORT AND RECOMMENDATION - 5

follows:

> Jeremy Mills, DO, performed a consultative physical examination on June 4, 2005, diagnosing the claimant with low back pain and sciatica. Examination revealed the claimant had no difficulty standing up from a chair or getting up and down from the examination table. The claimant was able to bend over and take his shoes and socks off without difficulty. Based on a physical examination, clinical interview, and review medical records, Dr. Mills assessed the claimant symptoms [sic] would limit him to sedentary or light activity due to his sciatica; however, Dr. Mill[s] also opined the claimant did not have any postural, manipulative or other special limitations. Dr. Mills supposed the claimant would benefit from physical therapy (Ex. 1F).
>
> Douglas Marsh, MD, performed a physical evaluation on December 28, 2005, diagnosing the claimant with lumbar degenerative disc disease and sciatica. Examination revealed mild limitation of range of motion, particularly in extension and flexion of the back and hip. Based on a physical examination, clinical interview, and review medical records, Dr. Marsh assessed the severity of claimant symptoms [sic] were moderate and would limit his ability to perform tasks requiring bending, climbing, pulling, pushing, reaching, and stooping. Dr. Marsh supposed that medical treatment would improve the claimant's symptoms within three months; however, at his present condition his work level would be sedentary (Ex. 3F/39).
>
> D.L. Osborne, PAC, performed a physical evaluation on July 11, 2007, diagnosing the claimant with chronic lumbar pain and noting his symptoms included radiculopathy into the left leg. Examination revealed decreased range of motion in extension and flexion of the back. Based on a physical examination, clinical interview, and review medical records, Mr. Osborne assessed the severity of claimant symptoms [sic] were between mild and moderate, and would limit his ability to perform tasks requiring bending, crouching, handling, kneeling, pulling, pushing and stooping. Mr. Osborne opined that physical therapy would improve the claimant's symptoms; however, without treatment his work level would be sedentary (Ex. 6F/4).
>
> The undersigned has considered all three above opinions, but gives controlling weight to none. As the opinions of Dr. Mills, Dr. March [sic], and Mr. Osborne are generally consistent with each other, they are all given great weight as they support the residual functional capacity. The opinions of Dr. Mills and Dr. Marsh are given slightly more weight as they are medical doctors while Mr. Osborne is a certified physician assistant.
>
> The undersigned has also considered the reports of the two State Agency consultants who provided assessments of the claimant's exertional capabilities. On September 9, 2007, Pax Gallagher opined that the claimant is able [to] lift and/or carry 10 pounds occasionally and less than 10 pounds

REPORT AND RECOMMENDATION - 6

> frequently; stand and/or walk for at least 2 hours in an 8-hour workday (with normal breaks); sit for a total of about 6 hours in an 8-hour workday (with normal breaks); can occasionally climb ramp/stair/ladder/rope/scaffolds, balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to vibration (Ex. 10F). On April 7, 2008, Guthrie Turner, MD, opined that the claimant is able [to] lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday (with normal breaks); sit for a total of about 6 hours in an 8-hour workday (with normal breaks); and possess no postural, manipulative, visual, or environmental limitations (Ex. 19F). Although neither State Agency consultant was an examining physician, both opinions were supported by a critical evaluation of the medical evidence and the medical source statements in the record. Of the two opinions, Mr. Gallagher's statement of limitations is more consistent with the medical source statements; on the other hand, Dr. Turner's statement of limitations in inconsistent with the medical evidence, and she disregards both the claimant's subjective complaints and certain medical sources statements. Both opinions deserve some weight; however, Mr. Gallagher's opinion is given greater weight as there exists a number of medical opinions supporting his assessment.
>
> . . .
>
> In summary . . . [t]he undersigned has given some weight to all functional capacity opinions of record, but controlling weight to none. . . .

AR 23-24. Plaintiff argues the ALJ should have included in his RFC assessment the postural limitations assessed by Dr. Marsh, Mr. Osborne and Mr. Gallagher.

As noted by the ALJ, Dr. Mills concluded that plaintiff had no postural or manipulative limitations. See AR 265. Also as noted by the ALJ, Dr. Marsh found plaintiff was limited in his ability to bend, climb, crouch, pull, push, reach, and stoop. See AR 343. Again as noted by the ALJ, Mr. Osborne found plaintiff's symptoms to be "between mild and moderate," and that they would limit his ability to bend, crouch, handle, kneel, pull, push, and stoop. AR 23; see also AR 308. Mr. Gallagher, whose findings were affirmed by Wayne Hurley, M.D., found, as the ALJ noted as well, that plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. See AR 445, 456. But Mr. Gallagher found no manipulative limitations or restrictions in the ability to push and pull. See AR 444, 446. Lastly, as further noted by the

REPORT AND RECOMMENDATION - 7

ALJ, Dr. Turner opined that plaintiff had no postural or manipulative limitations or restrictions in his ability to push and pull. See AR 475-77.

Although the ALJ gave "great weight" to the opinions of Dr. Mills, Dr. Marsh and Mr. Osborne, she failed to explain why she did not adopt the postural limitations assessed by Dr. Marsh and Mr. Osborne, and instead appeared to rely solely on the opinion of Dr. Mills. Although it is true as argued by defendant, that greater weight may be given to the opinion of Dr. Mills, who is an "acceptable medical source'" than that of Mr. Osborne, who is not, such a distinction does not apply with respect to the opinion of Dr. Marsh. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources").

In addition, although it is also true that where the opinion of an examining physician such as that of Dr. Mills is based on independent clinical findings, it is within the ALJ's discretion to disregard the conflicting opinion in another examining physician's diagnosis such as that of Dr. Marsh, the ALJ did not actually state she was doing that in this case. See AR 23; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). The ALJ, furthermore, failed to state why she did not adopt the postural limitations assessed by Mr. Gallagher, even though she expressly found Mr. Gallagher's "statement of limitations" to have been "more consistent with the medical source statements" in the record than those of Dr. Guthrie, and therefore the opinion of Mr. Gallagher to be deserving of "greater weight" than Dr. Guthrie's. AR 23-24.

Defendant argues any error committed by the ALJ here was harmless, given that none of the jobs the vocational expert identified as ones plaintiff could do in light of the RFC assessment the ALJ adopted, are defined by the Dictionary of Occupational Titles ("DOT") as involving any

REPORT AND RECOMMENDATION - 8

climbing, balancing, stooping, kneeling, crouching, or crawling.[2] See AR 68-70; DOT 739.687-182, 1991 WL 680217 (table worker); DOT 669.687-014, 1991 WL 686074 (small products inspector); DOT 713.684-038, 1991 WL 679267 (polisher). The undersigned agrees that since none of these postural limitations are required by the jobs the vocational expert identified – and the ALJ adopted (see AR 25-26) – the ALJ's error was harmless, as it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

On the other hand, each of the jobs identified by the vocational expert and adopted by the ALJ require frequent reaching and handling, whereas Dr. Marsh found plaintiff was limited in his ability to reach and Mr. Osborne found he was limited in his ability to handle. See AR 308, 343; DOT 739.687-182, 1991 WL 680217; DOT 669.687-014, 1991 WL 686074; DOT 713.684-038, 1991 WL 679267. Again, while the ALJ could have adopted the opinion of Dr. Mills – who found no reaching limitation – over that of Dr. Marsh had she stated or indicated that this is what she was doing, she did not do so, but rather gave them both "great weight."[3] AR 23. Further, once more although the ALJ was entitled to give less weight to the opinion of Mr. Osborne than to the opinion of Dr. Mills, the ALJ only stated that he was giving "slightly more weight" to that

---

[2] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony thus must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). As such, the ALJ's description of a claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations found not to exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

[3] The ALJ also failed to state why he appears to have adopted the findings of Mr. Gallagher over those of Dr. Marsh and Mr. Osborne. See AR 23-24.

REPORT AND RECOMMENDATION - 9

of Dr. Mills, and gave no indication she was rejecting Mr. Osborne's handling limitation. <u>Id.</u> Nor is it at all clear that a limitation on pushing and/or pulling as Dr. Marsh and Mr. Osborne both found (<u>see</u> AR 308, 343), would have no significant impact on plaintiff's ability to perform the jobs the vocational expert identified, as such a limitation is not specifically addressed by the descriptions thereof contained in the DOT. <u>See</u> DOT 739.687-182, 1991 WL 680217; DOT 669.687-014, 1991 WL 686074; DOT 713.684-038, 1991 WL 679267.

II. <u>Additional Evidence Submitted to the Appeals Council</u>

The record contains a psychological evaluation report from Robert E. Schneider, Ph.D., dated February 17, 2000, which reads in relevant part:

> SUMMARY AND CONCLUSIONS:
>
> . . .
>
> [Plaintiff] believes that he can work with computers. He states that he has assembled components, with the help of a friend. It is not clear exactly what he has done independently. He believes that he is good with his hands and says that he has been able to change brakes, alternators and starters and he is capable [of] performing a tune-up on a motor vehicle.
>
> On interview, [plaintiff] presents as an awkward, peculiar and immature individual. He has a non-interactive style. He rarely answered questions directly and was frequently "off in his own thoughts". It was very difficult to get clear information in this interview. He is a concrete individual who mispronounces words. He has a schizotypal presentation.
>
> [Plaintiff] scored in the range of borderline retardation . . . He scored in this range multiple times before. It is possible that this underestimates his innate intelligence, but it is an accurate representation of the practical intelligence that he brings to a job. He will be slow to learn and slow to perform tasks. He requires a fairly high level of close supervision. A gross activity such as packing diapers is within his ability level. Apparently, he was able to do it at an acceptable speed. He was extremely slow in this testing, suggesting that he will be very slow in performing most tasks.
>
> . . . [H]e can work from a diagram. However, he does not demonstrate efficient visual motor abilities. He has to work very hard to perform basic visual motor functions. He demonstrates extremely limited problem solving

REPORT AND RECOMMENDATION - 10

abilities. He can probably learn a repetitive activity, but he cannot perform any type of repair activity and it is very unlikely that he can assemble a whole computer. It will be noted that [plaintiff] overstates his abilities. This has been indicated in the past and it was apparent at the current time. Consequently, despite his report that he is good with his hands and says that he has been able to assemble a computer with a friend's help, it does not appear that these skills are sufficient for competitive employment.

Testing indicates that reading is extremely limited. He is able to accurately identify symbols, letters and numbers and he is able to recognize specific words. That is, he can learn to recognize words that are specific to a job. Therefore, he could learn to read a work assignment list. He was able to read only the most basic, third grade level, which is primarily limited to declarative sentences. He had states [sic] that he is able to read books, including the Bible and to read instructions regarding installation of computer programs. This is very unlikely. Reading is not useful for vocational purposes.

Math skills are a relative area of strength. . . . He cannot make calculations in the course of his work. He cannot make mental calculations when he is spending or planning the use of his money. It is recommended that he write everything down and learn to use a calculator.

. . . He is slow to learn and he retains only half as much as the average worker. It will be necessary to provide focused training with very limited material.

Personality tests indicate that [plaintiff] requires a considerable amount of support and direct guidance. He seems to accept direction and he accepts guidance and almost welcomes it. Consequently, it appears that he will be open to having a job coach or job facilitator.

IMPRESSIONS:

1. The records indicate a history of psychiatric and behavioral problems, developmental delays, immature and inappropriate behavior, behavioral disturbance, inability to moderate primitive emotions, and limited ability to care for himself. It is likely that this individual continues to suffer from a psychiatric disorder. Many aspects of his presentation suggest that he suffers from As[p]erger's syndrome, which is a variant of autism. This will predict ongoing difficulties with the social environment of a job. Consequently, if the individual can be given a job in which he essentially works by himself, with minimal interpersonal contact, it will minimize social anxiety and also will minimize distraction.

2. It is unlikely that he can perform any type of fine motor activity at a competitive speed. His previous work [in the packaging department of

REPORT AND RECOMMENDATION - 11

|   |   |
|---|---|
|   | a diaper factory] is seen as being a reasonable model since he was performing gross motor activities. He states that he was an auto detail helper. He can probably return to similar activities. He might be able to perform the final stages of production work, installing casing or controls on electronics equipments. It is unlikely that he can perform basic assembly. |
| 3. | . . . [Plaintiff] will require a considerable amount of coaching. . . . |
| 4. | Reading is extremely limited. . . . Enrollment in a basic literary class may be of some benefit. |
| 5. | [Plaintiff] is unrealistic about who he is and what he can do. This will be an issue in vocational planning and placement. He believes he is far more capable and competent than appears to be the case. Therefore, introducing a vocational option as a potential stepping stone, might derail some of his reactions. . . . [P]roviding vocational options as [sic] the entry level opportunity through which he can demonstrate his skills and receive increasing responsibilities might be sufficient. |
| 6. | . . . [T]esting indicates that he is essentially unable to function in school. His academic skills are insufficient and his intellectual abilities and ability to focus and think are not sufficient. He might be able to benefit from a very simple training program in which he is trained to perform a skill. It is extremely unlikely that he can complete a GED and he certainly cannot complete a computer training program. |

AR 502-04. Dr. Schneider also gave plaintiff with a global assessment of functioning ("GAF") score of 30.[4]

The record also contains a psychiatric evaluation report from Robert K. Burlingame, M.D., dated April 16, 2001, in which plaintiff was diagnosed with a history of attention-deficit disorder with hyperactivity, combined type, a rule-out diagnosis of a psychotic anxiety disorder,

---

[4] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score between 21 and 30 falls into the category described as follows: 'Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication of judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).[']" Jacobson v. Astrue, 2011 WL 4387641 *5 n.5 (C.D. Cal.) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

REPORT AND RECOMMENDATION - 12

a possible pervasive developmental disorder (Asperger's syndrome), and borderline intellectual functioning "as per Dr. Schneider's testing." AR 507. In addition, Dr. Burlingame gave plaintiff a current GAF score of 50, with a score of 60 "[o]ver the last 12 months."[5] Id. Dr. Burlingame further opined in relevant part as follows:

> . . . [Plaintiff's] vocational potential is uncertain. He could possibly respond to treatments. His prognosis is not good because of his complexity. If he fails to respond dramatically to treatments, then realistic vocational options would probably be some form of highly structured supervised shop, working within his limitations as outlined by Dr. Schneider's report.

AR 509.

Plaintiff argues the Appeals Council erred when it did not address this evidence. But as pointed out by defendant, this Court lacks jurisdiction to review the Appeals Council's denial of plaintiff's request for review. See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting that no statute – source of district court's authority to review – authorizes district court to review Appeals Council decisions to deny review). This is because "[w]hen the Appeals Council denies a request for review [of the ALJ's decision], it is a non-final agency action not subject to judicial review," and, as such, "the ALJ's decision becomes the final decision of [defendant]." Taylor v. Commissioner of Social Security Admin., 659 F.3d 1228, 1231 (9th Cir. 2011). Thus, the Court "may neither affirm nor reverse the Appeals Council's decision." Id.

The Appeals Council, furthermore, did consider the above two reports, but found they did "not provide a basis for changing the [ALJ's] decision." AR 1-2, 4. Further, as plaintiff himself admits, the Appeals Council is "'not required to make any particular evidentiary finding' when it

---

[5] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting DSM-IV-TR at 34); see also England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV-TR at 34).

REPORT AND RECOMMENDATION - 13

reject[s] evidence . . . obtained after an adverse administrative decision." Taylor, 659 F.3d at 1232 (quoting Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996)). As such, other than noting it considered the reports, the Appeals Council did not have to give specific, clear or convincing, reasons for rejecting them. See 20 C.F.R. § 404.970(b) (requiring that Appeals Council only "consider" any "new and material evidence" submitted to it, where it "relates to the period on or before the date of the [ALJ's] hearing decision," and "evaluate the entire record including the new and material evidence" and "review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.") (emphasis added); see also 20 C.F.R. §§ 404.976(b), 404.979, 416.1470(b), 416.1476(b), 416.1479.

Plaintiff argues that, nevertheless, this case should be remanded for further administrative proceedings in light of the above two reports. Specifically, plaintiff argues, and defendant does not disagree, that this Court has the discretion to remand this matter for further proceedings to address such newly submitted evidence, and may consider it in determining whether the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52, 1454 (9th Cir. 1993)[6]; Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez to find additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez,

---

[6] In Ramirez, the Ninth Circuit found specifically as follows:

> Although the ALJ's decision became [defendant's] final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal. Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision." For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

Id.

REPORT AND RECOMMENDATION - 14

74 F.3d 967, 971 (again citing to Ramirez in holding that evidence submitted to Appeals Council is part of record on review to federal court).

Defendant, citing Mayes v. Massanari, 276 F.3d 453 (9th Cir. 2001), argues that to merit remand, plaintiff must show that the newly submitted evidence was new and material and that he had good cause for not submitting it earlier. This is the standard for review of evidence that has been submitted for the first time to federal court contained in the Social Security Act. See 42 U.S.C. § 405(g) (stating in relevant part that remand may be ordered "for further [administrative] action," but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."); see also Mayes, 276 F.3d at 462. In Mayes, the Ninth Circuit applied the standard set forth in 40 U.S.C. § 405(g), but expressly stated it did not have to decide whether good cause "is required for submission of new evidence to the Appeals Council, as [the claimant] conceded in her briefs that good cause was indeed required."[7] Id.

Nevertheless, Mayes does appear to mandate that evidence submitted for the first time to the Appeals Council be both "new" and "material" as required by 42 U.S.C. § 405(g) to justify a remand, whether or not there is a "good cause" requirement. Id. To be material under 42 U.S.C. § 405(g), the newly submitted evidence "must bear 'directly and substantially on the matter in dispute.'" Id. (citation omitted). In addition, plaintiff must demonstrate there is a "reasonable possibility" such evidence "would have changed the outcome of the administrative hearing." Id. (citation omitted).

---

[7] Plaintiff states that in Woodsum v. Astrue, 711 F.Supp.2d 1239 (W.D. Wash. 2010), this Court had determined that "good cause" must be shown in order to demonstrate remand is warranted. But in that case, the Court – again noting the Ninth Circuit's express statement in Mayes that it had not decided if a demonstration of good cause was required – pointed out that neither party had addressed this issue. Id. at 1251. In addition, because defendant had not argued that a showing of good cause was required, the Court would presume defendant did not believe such a showing was necessary, at least in that case. Id. Accordingly, the Court in Woodsum did not actually determine that a showing of good cause was required to warrant remand.

REPORT AND RECOMMENDATION - 15

The undersigned agrees with defendant that if "good cause" is required, plaintiff has not established it in this case as he has not shown why Dr. Schneider's and Dr. Burlingame's reports could not have been discovered prior to the hearing, but then were somehow obtained subsequent thereto. Nor has plaintiff demonstrated the reports are "new", given that they both were issued before his alleged onset date of disability. On the other hand, despite the fact that those reports are dated at least several months – and, in the case of the report issued by Dr. Schneider, almost two years – prior to that onset date, there is no indication either Dr. Schneider or Dr. Burlingame believed the symptoms and limitations with which they assessed plaintiff would not continue to exist past that date, particularly given the complexity and severity of plaintiff's mental condition indicated in both reports.

Thus, there does seem to be at least a "reasonable" possibility that the reports would have changed the outcome of the administrative proceedings. That said, it is not necessary to decide if good cause is required or exists here, or whether plaintiff has demonstrated the reports issued by Drs. Schneider and Burlingame are new and material, since, as discussed above, this case should be remanded in any event for further consideration of the reaching, handling and pushing/pulling limitations with which plaintiff was assessed. On remand, therefore, defendant shall consider as well the evaluation reports issued by Dr. Schneider and Dr. Burlingame, even though this matter is not being remanded on the basis thereof.

III. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

REPORT AND RECOMMENDATION - 16

omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain concerning plaintiff's residual functional capacity, remand for further administrative proceedings is appropriate in this case.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

REPORT AND RECOMMENDATION - 17

474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 2, 2012**, as noted in the caption.

DATED this 14th day of February, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18